**NOBLES et ux. v. TEXAS INDEMNITY INS. CO.** (Motion Nos. 8374 and 8404; No. 1141—5091.)

Commission of Appeals of Texas, Section A. Feb. 12, 1930.

For former opinion, see 12 S.W.(2d) 199, which reformed judgment in 1 S.W.(2d) 451.

G. N. Brubaker, of San Marcos, and King & York, of Austin, for plaintiffs in error.

Wood & Wood, of Granger, and Wilcox & Graves, of Georgetown, for defendant in error.

CRITZ, J. The original opinion of the Commission in this case is reported at 12 S.W.(2d)

199. This suit was instituted in the district court of Mason county, Texas, by Texas Indemnity Company, to set aside an award of the Industrial Accident Board, entered on June 10, 1926, allowing Julius Nobles and wife compensation for the death of their son, Lee Nobles. The award was made on the theory that at the time he received injuries, resulting in his death, he was an employee of Magnolia Petroleum Company, who at the time carried liability insurance under the Workmen's Compensation Act of this state with Texas Indemnity Company.

Julius Nobles and wife answered in the district court, and sought recovery on account of the death of their son, alleging in substance that Lee Nobles received injuries resulting in his death while an employee of Magnolia Petroleum Company, and while engaged in such employment. The trial in the district court, with a jury, resulted in a verdict and judgment for Julius Nobles and wife. The indemnity company appealed to the Court of Civil Appeals at San Antonio, which court reversed the judgment of the trial court and rendered judgment for the indemnity company. 1 S.W.(2d) 451. Julius Nobles and wife applied for writ of error to the Supreme Court. The writ was granted and the cause referred to this section of the Commission. The Commission, on original hearing, recommended that the judgment of the Court of Civil Appeals be reformed, so as to remand the cause to the district court for a new trial, and as thus reformed the judgment of the Court of Civil Appeals be affirmed. The judgment recommended by the Commission was entered by the Supreme Court. The cause is again before us on motions for rehearing, filed by both parties.

After a careful and exhaustive examination of the record in this case, and the authorities, we have reached the conclusion that we were in error in our original opinion. We are now of the opinion, and now hold that the part of the opinion of the Court of Civil Appeals, which holds, as a matter of law, that Lee Nobles was not an employee of Magnolia Petroleum Company at the time he received the injuries resulting in his death within the meaning of the Workmen's Compensation Act is correct. This holding is decisive of the case and all other issues become immaterial.

We think the testimony establishes the following facts as a matter of law: That Clyde Buttery was the agent of Magnolia Petroleum Company at Llano, Llano county, Tex., at all times involved herein, having charge in the usual manner of the local business of that Company; that the agency in question delivered oil gasoline, and other products of the oil company in Llano, Mason and surrounding territory in trucks; that Buttery owned the trucks and hired the truck drivers; that Leonard Janner was employed by Buttery as a truck driver; that Janner's duties were to drive a truck and deliver the products of the oil agency to its customers; that the truck used to make such deliveries belonged to Buttery; that at the time Buttery had two trucks which were used in the business; that Lee Nobles was in the regular employment of the Qualls Hardware Company at Llano, Tex.; that about noon on November 14, 1925, the day before the deer hunting season opened, Lee Nobles approached Janner about the two, Janner, and Lee Nobles, going deer hunting together the next day, at the time requesting Janner to go deer hunting with him; that Janner informed Lee Nobles that he would be unable to go, giving as the reason that he (Janner) had to make some deliveries of oil and gas, and had to go to Mason; that Lee Nobles then proposed to help Janner make his deliveries if he (Janner) would go deer hunting with him; that Janner accepted the proposition, telling Lee Nobles, "All right;" that Janner did not agree to pay Lee Nobles anything, the sole motive actuating Lee Nobles being the desire to get Janner to go hunting with him; that the arrangements for Lee Nobles to help Janner were made at the instance and suggestion of Lee Nobles; that in pursuance of the above arrangements between Janner and Lee Nobles, Lee Nobles, who was a regular employee of the above-named hardware company, went to E. H. Qualls and asked him if he (Nobles) could get off that day, stating that he wanted to help Leonard Janner deliver some oil, and would get the little Bowie boy to work in his place, at the time telling Qualls, that he wanted to go hunting; that Qualls consented to the request of Lee Nobles; that about 3 o'clock on that same day Lee Nobles, in pursuance of his arrangement with Janner, took a truck belonging to Buttery, intending to deliver certain products of the oil agency to customers in its territory; that Buttery knew Lee Nobles was driving the truck and permitted him to do so, but knew nothing of the arrangement between Nobles and Janner; that Buttery had not agreed to pay Lee Nobles for his services, and Lee Nobles' only motive or purpose in driving the truck was to get Janner as a hunting companion; that Lee Nobles received injuries on this trip resulting in his death; that Janner had no authority from Buttery to hire Lee Nobles, but Buttery saw Nobles driving the truck; that Janner's duties were those of a truck driver, but at times when Buttery needed extra help he would instruct Janner to find some one.

Under the above facts we now hold that Lee Nobles at the time he received the injuries, resulting in his death, was a pure volunteer, and not an employee of Magnolia Petroleum Company, within the meaning of the Compensation Act, even should it be admitted that those employed by Buttery were such.

It is true that the jury found Lee Nobles was an employee of the Magnolia Petroleum

Company at the time he received the injuries resulting in his death, but we have searched the record in vain to find any evidence of a probative nature to sustain this finding. The jury, under the law are the exclusive judges of the facts proved, and the weight to be given to the testimony. Also where there is evidence of a probative nature sustaining a jury finding, this court will not disturb their verdict; but a jury, under our system, has no right to ignore uncontroverted evidence which comes to them with no suspicion attached to it. In the case at bar the facts above detailed are established to that degree of certainty, that to our minds the Court of Civil Appeals was correct in holding that Lee Nobles assumed the driving of the truck of his own free will without any express or implied promise of remuneration, and that he was a volunteer. Such being the case his parents are not entitled to recover on account of such gratuitous services. Article 8309, R. C. S. of Texas 1925; 40 Cyc. p. 222; Black's Law Dictionary, p. 1228; Texas Employers' Insurance Association v. Tabor (Tex. Com. App.) 283 S. W. 779, 780; Marshall & E. T. Ry. Co. v. Sirman (Tex. Civ. App.) 153 S. W. 401 (writ refused); Mayton v. T. & P. Ry. Co., 63 Tex. 77, 51 Am. Rep. 637; Blalack v. Traction Co. (Tex. Civ. App.) 149 S. W. 1086, 1090 (writ refused).

Article 8309, supra, defines an employee as follows: "'Employee' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written," etc.

40 Cyc. 222, supra, defines a volunteer as: "One who enters into service on his own free will; one who gives his service without any express or implied promise of remuneration; one who does or undertakes to do something which he is not legally or morally bound to do, and which is not in pursuance or protection of any interest."

Black's Law Dicktionary, 1228, supra, defines a volunteer as follows: "A person who gives his service without any express or implied promise of remuneration in return is called a 'volunteer,' and is entitled to no remuneration for his services, nor to any compensation for injuries sustained by him in performing what he has undertaken."

In the Tabor Case, supra, Section B of the Commission held as follows: "Now, the very right of defendant in error to recover as an employee of Fulwiler Motor Company depends upon his showing that he was in the service of that company under a 'contract of hire,' for, unless there is a 'contract of hire,' he is not an employee within the meaning of the Workmen's Compensation Act."

In the Sirman Case, supra, it is shown that the railway company maintained and operated at one of its stations a gasoline engine to pump water for its locomotives. The deceased, who was a boy about 15 or 16 years of age, and the station agent, were walking towards the pump house intending to start the pump. The agent was called back by some one who wanted freight at the depot. The deceased went on, intending to start the engine himself. When he struck a match to ignite the burner an explosion occurred which caused injuries resulting in his death. The court instructed the jury that the plaintiff was entitled to recover if the deceased was acting as a volunteer with the consent of the agent of the railway company in assisting to run the pump station. There was a judgment for the plaintiff against the railway company. The Court of Civil Appeals reversed and rendered this judgment holding that the charge was erroneous and that Sirman was not an employee of the railway company, but a mere volunteer.

In the Mayton Case, supra, it is shown that Mayton was requested by one of his employees to assist in operating the brake of the train, which request Mayton undertook to comply with and was injured in so doing. The Supreme Court held: "So far as we can see, the plaintiff was a mere volunteer, attempting * * * it may be * * * to assist the servants of the railroad company; but there is nothing from which we can infer the liability of the Company for the injury which he sustained."

In the Blalack Case, supra, it was held: "We are of the opinion that the trial court committed no error in directing a verdict for the traction company. The evidence shows conclusively that Reed was not authorized to employ Blalack as a servant of the company. If it can be said he was acting in the apparent scope of his authority, we think when the whole evidence is considered the conclusion is evident that it was not in contemplation at the time of either Reed or Blalack that Blalack was to become an employee of the company, and the company be bound to him for his wages, but it shows that Blalack was merely helping Reed with work and looking alone to receive his 25 cents from Reed, and not looking for his compensation from the company. Under such circumstances, the appellee was under no obligation to furnish appellant a safe place to work or to look after his interest in any way."

We recommend that the motion for rehearing filed by Julius Nobles and wife be refused, but that the motion filed by Texas Indemnity Company be granted, and the judgment heretofore entered by the Supreme Court be vacated, and set aside, and judgment now entered affirming the judgment of the Court of Civil Appeals.

## On Rehearing.

CURETON, C. J. Previous order set aside, and judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.